# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| TIMOTHY GRUVER and KARRI GRUVER, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:21-cv-1210 |
| MONTESA EXPRESS, INC., PINOY TRUCKING, INC., REX EXPRESS, INC., TENNESSEE COMMERCIAL WAREHOUSE, INC., NOLASCO MONTESA, REX MONTESA, and ANTHONY DUNN, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER & OPINION

This matter is before the Court on motion by Defendant Tennessee Commercial Warehouse, Inc., for summary judgment. (Doc. 75). Plaintiffs Timothy and Karri Gruver have responded (doc. 82), and Defendant replied (doc. 83). This matter is therefore ripe for review. For the following reasons, Defendant's Motion for Summary Judgment (doc. 75) is GRANTED.

### BACKGROUND

On August 23, 2019, Plaintiff Timothy Gruver's motor vehicle was struck as he was driving northbound on Illinois Route 47 near Livingston County. (Doc. 82 at 2). The collision occurred when Anthony Dunn, who was operating a tractor going southbound, rear-ended the vehicle in front of him and then swerved into oncoming traffic. (Doc. 82 at 1–2). At the time, Illinois Route 47 was under construction,

requiring the southbound lanes to split into single paths of traffic going both directions. (Doc. 75 at 1–2). Plaintiff Timothy Gruver suffered various injuries from the accident. (Docs. 5 at 37–38, 82 at 2). His wife, Plaintiff Karri Gruver, alleges a loss of consortium due to the injuries suffered by her husband. (Doc. 5 at 16).

The instant lawsuit was filed on July 28, 2022. (Doc. 1). Plaintiffs' Amended Complaint is now the operative pleading. (Doc. 5). It names seven Defendants: Montesa Express, Inc. ("Montesa Express"), Pinoy Trucking, Inc. ("Pinoy Trucking"), Rex Express, Inc. ("Rex Express"), Tennessee Commercial Warehouse, Inc. ("TCW"), Nolasco Montesa, Rex Montesa, and Anthony Dunn ("Dunn"). (Doc. 5). TCW, Montesa Express, Pinoy Trucking, and Rex Express are listed as "Corporate Defendants" by Plaintiffs. (Doc. 5 at 4). TCW, who moves for summary judgment, is an "asset leasing company and equipment owner" which owned the chassis, or the base frame, attached to the tractor involved in the accident. (Doc. 82 at 3). The chassis (identified as "TCWZ 417132") was leased as a part of a Master Lease Agreement between TCW and North American Chassis Pool Cooperative ("NACPC"). (Doc. 82 at 3). The equipment was then placed by NACPC into the Chicago-Ohio Valley Consolidated Chassis Pool LLC ("COCP") to be used by various motor carriers. (Doc. 82 at 3). Pinoy Trucking signed a Uniform Intermodal Interchange Agreement ("UIIA") with the chassis pool. (Doc. 83 at 4). Through this agreement, Pinoy Trucking gained access to the chassis and used it to transport a shipping container on the day of the accident. (Docs. 83 at 4, 82 at 2). Pinoy Trucking employed Anthony Dunn, who was assigned as the driver of the tractor, which pulled the chassis and container. (Doc. 82 at 5).

Plaintiffs allege each Defendant is liable for the accident on August 23, 2019, through various legal theories. (*See* doc. 5). Count I is directed at Montesa Express for negligent hiring, training, entrustment, supervision, retention, and maintenance. (Doc. 5 at 16). Counts II and III contain the same claim against Pinoy Trucking and Rex Express, respectively. (Doc. 5 at 20, 24). Count IV is aimed at TCW, alleging a claim of negligence in hiring, entrustment, and maintenance. (Doc. 5 at 28). Counts V, VI, and VII allege a claim of negligence against Nolasco Montesa, Rex Montesa, and Anthony Dunn, respectively. (Doc. 5 at 30, 31). Count VIII alleges gross negligence by one or more of the Corporate Defendants. (Doc. 5 at 35). Count IX contains the loss of consortium claim and is generally aimed at all Defendants. (Doc. 5 at 36). Count X is similarly directed at all Defendants and alleges Plaintiffs have suffered damages. (Doc. 5 at 37).

The procedural history of this case has been somewhat convoluted. Defendants Rex Express, Rex Montesa, Pinoy Trucking, Nolasco Montesa, and TCW answered the Amended Complaint. (*See* docs. 30, 31, 37, 39, 55). A special representative of the estate of Anthony Dunn, who passed away in the time between the accident and Plaintiffs' filing of this lawsuit, also answered. (*See* doc. 61). TCW filed crossclaims against both Pinoy Trucking and Dunn, seeking contribution and indemnity. (*See* doc. 66). Default was entered against Montesa Express for failure to file an answer or responsive pleading. (Text Order dated May 3, 2023). The parties then moved into

discovery, and Defendant TCW moved for summary judgment on the claims against it.[1] (Doc. 75).

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 250 (internal quotations omitted).

The Court must construe the record in the light most favorable to the nonmovant, *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003), "resolving all factual disputes and drawing all reasonable inferences in favor of [the nonmovant]," *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). It "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on a motion for summary judgment, the Court does not give the non-moving party "speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th

---

[1] While the instant Motion was pending, default was entered against both Defendants Rex Montesa and Rex Express for failure to appear at a hearing and subsequent failure to respond to a Show Cause Order. It appears that Defendant Rex Express no longer retains corporate counsel. (Text Order dated January 3, 2024).

Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted). Not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted).

## DISCUSSION

Defendant TCW moves for summary judgment on the claims asserted by Plaintiffs. (Doc. 75). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. (*See* docs. 4, 5). "In a diversity case, the federal court must apply the choice of law rules of the forum state to determine applicable substantive law." *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704–05 (7th Cir. 2004). Personal injury actions, under Illinois law, are presumptively governed by the law of the state where the accident occurred, unless some other state has a more significant relationship to the matter. *Townsend v. Sears, Roebuck & Co.*, 227 Ill.2d 147, 163 (2007). Thus, the Court will apply Illinois law as the accident occurred within the state and the parties agree.

In Count IV, Plaintiffs allege Defendant TCW is liable for negligent entrustment, negligent hiring, and failure to maintain the chassis. (Doc. 5 at 28–30). TCW, as a Corporate Defendant, is also alleged to have been grossly negligent in Count VIII. (Doc. 5 at 35–36). Next, Plaintiffs allege a loss of consortium claim (Count IX) and damages (Count X) against TCW. (Doc. 5 at 36–38). As an initial matter, Plaintiffs' claim for damages is not a cause of action. Damages are a remedy;

therefore, Count X is summarily dismissed. This is not to say Plaintiffs are prevented from seeking damages. The Court will address the remaining claims in turn.

## I.   Negligence – Counts IV & VIII

Plaintiffs allege TCW was negligent in various ways scattered throughout Counts IV and VIII. Some of the claims pertain to actions by other parties, such as Dunn or Pinoy Trucking. (*See e.g.*, doc. 5 at 29, 35–36). Some relate to TCW's actions, including a claim of negligent entrustment. (*See e.g.*, doc. 5 at 28–30, 36).

### A.   *Negligent Entrustment*

In the Amended Complaint, Plaintiffs allege TCW is liable for its own negligence in entrusting the chassis to Pinoy Trucking and Dunn when it knew or should have known that both were unfit. (Doc. 5 at 28). As an initial matter within the Response, they argue that several factual statements are in dispute and preclude summary judgment, including whether Plaintiffs have identified evidence that Dunn had TCW's permission to use the chassis; whether TCW had direct involvement with the chassis after transferring it to NACPC; and whether TCW had the right to use the chassis after transferring it to NACPC. (*See* doc. 82). After considering the factual statements and responses, this Court disagrees that a genuine dispute exists.

In response to TCW's factual statement that Plaintiffs have no evidence to support the necessary elements of a negligent entrustment claim, Plaintiffs cite testimony that demonstrates TCW knew the leased chassis would be placed in a chassis pool to be used by various motor carriers. (Doc. 82 at 12). This, as argued by Plaintiffs, demonstrates implied permission on the part of TCW for Pinoy and Dunn to use the chassis. (Doc. 83 at 12). Plaintiffs' contention that TCW's actions constitute

permission is not a fact, but rather a legal conclusion related to this claim. For that reason, the Court does not find the dispute to be genuine and deems the factual statement that Plaintiffs have not identified evidence to support the element of permission, admitted. Also, in disputing factual statements that TCW did not have further direct involvement nor the right to use the chassis after the transfer, Plaintiffs state "[t]he lease agreement speaks for itself, and contains provisions for TCW to recall the chassis[,]" citing Paragraph 11 of the Master Lease Agreement. (Doc. 82 at 10–11). However, Paragraph 11 describes the termination rights of the parties. (*See* doc. 75-7 at 3). To label this as a right of recall held by Defendant TCW is misleading, and the Court views this type of response as argumentative rather than providing evidentiary support to a dispute. Responsive statements that amount to legal argument will not be considered. Thus, those facts are also not in genuine dispute, and are deemed admitted. The listed disputes do not impede the Court's ability to resolve this argument on the merits.

To state a negligent entrustment claim, Plaintiffs must allege that TCW "gave another express or implied permission to use or possess a dangerous article or instrumentality which [defendant] knew, or should have known, would likely be used in a manner involving an unreasonable risk of harm to others." *Evans v. Shannon*, 201 Ill.2d 424, 434 (2002). Here, relevant considerations are: "(1) whether the owner of the vehicle entrusted the car to an incompetent or unfit driver, and (2) whether the incompetency was a proximate cause of a plaintiff's injury." *Id.* Entrustment may be given by either express or implied permission; the latter "can be inferred from a

course of conduct of the parties, their relationship, or from the behavior of the parties in specific circumstances." *Bishop v. Morich*, 250 Ill. App. 3d 366, 369 (1st Dist. 1993). This includes "a mutual acquiescence or lack of objection under circumstances signifying permission." *Watson v. Enter. Leasing Co.*, 325 Ill. App. 3d 914, 922 (1st Dist. 2001) (quotation omitted).

TCW argues that summary judgment is appropriate on this claim because Plaintiffs cannot establish any of the necessary elements. (Docs. 75 at 17–18, 83 at 14–15). It points out that Plaintiffs admitted that TCW did not control the chassis, had nothing to do with booking the chassis, did not know Pinoy Trucking would use it, had no contact with Dunn, did not hire or retain Pinoy Trucking, and was "four steps removed from the driver of the tractor involved in the accident and did not have any relationship with the driver or the motor carrier transporting the chassis (TCW – NACPC – chassis pool – Pinoy Trucking – Anthony Dunn)." (Doc. 83 at 14). Considering these admissions, TCW argues that the suggestion that it gave implied permission to either Pinoy Trucking or Dunn is misplaced. (Doc. 83 at 15). TCW then contends that a successful negligent entrustment claim under these circumstances would be akin to finding TCW strictly liable "for the negligence of a truck driver who is involved in an accident while driving a truck that fortuitously happens to be transporting a chassis that TCW leased to NACPC." (Doc. 83 at 15).

A situation resembling the circumstances presented here was discussed in *Johnson v. XTRA Lease, LLC*, 2010 WL 706037 (N.D. Ill. Feb. 24, 2010). There, Defendant XTRA leased equipment, including semi-tractor trailers, that was

involved in an accident. *Id*. at *4. A negligent entrustment claim was leveled against XTRA; however, the district court found no evidence to support it. *Id*. at *5. Various courts outside of the Seventh Circuit have come to similar conclusions regarding a lessor's liability in negligent entrustment claims. While the Court applies Illinois law, the out-of-state cases provide insight into an infrequent issue of law. In *Guinn v. Great West Cas Co*., a court rejected a negligent entrustment claim against an equipment lessor under Oklahoma law. No. CIV-09-1198, 2010 WL 4811042, at *6 (W.D. Okla. Nov. 19, 2010). There, the undisputed facts failed to establish that the lessor authorized the driver to use the vehicle or could have known that the lessee would fail to properly supervise trainees, and therefore did not "ha[ve] the requisite knowledge to render it liable for negligent entrustment." *Id*. at *8. Applying New York state law, the court in *Muller v. Gilliard* held that a commercial lessor, Penske, could not be liable as a matter of law for negligent entrustment when Penske's lessee later allowed another individual to drive the leased equipment. 2010 WL 2245567 (N.Y.Sup.Ct. May 26, 2010). The court wrote:

> It is not disputed that Penske did not entrust the subject truck to Gilliard, the operator of such truck. Rather, Penske leased the truck to International who in turn, entrusted it to Gilliard. The moving papers sufficiently established that Gilliard was not an employee, servant or agent of Penske or otherwise known to it. The opposing papers submitted by the plaintiffs failed to raise any question of fact regarding knowledge, actual or constructive, on the part of moving defendant Penske that its entrustee, International, had a propensity to use leased vehicles in an improper or dangerous fashion.

*Muller,* 2010 WL 2245567 at *2.

Here, the chassis at issue was leased as a part of an agreement to lease over one thousand pieces of equipment to NACPC, which then placed the equipment into a chassis pool. (Doc. 82 at 3). There are no facts submitted by Plaintiffs that demonstrate TCW was involved with any day-to-day operations concerning the chassis, or that it had any knowledge of who was using it on the day of the accident. (Doc. 82 at 4). The undisputed facts fail to establish that Dunn was an employee, agent, or otherwise in service to TCW. (Doc. 82 at 5–8, 11). The Court agrees with TCW that no reasonable jury could find it liable for negligent entrustment under these circumstances because there is not enough evidence to support a finding of implied permission. The evidence submitted by Plaintiffs fails to raise a question of fact as to TCW's knowledge that NACPC would place the chassis in a pool in which motor carriers improperly use the equipment, and nevertheless, Plaintiffs do not even make that argument. Instead, Plaintiffs argue that TCW should have ensured the parties who utilized the equipment in the chassis pool were motor carriers with adequate safety records, and because TCW did not take this affirmative action, it was reasonably foreseeable that it would be used by an "unsafe carrier." (Doc. 82 at 21–22). However, TCW had never communicated with the parties involved in the accident until this lawsuit, and so that argument fails to establish how TCW could check the history of a motor carrier it did not know existed.

There are not enough facts to support the necessary foresight element of negligent entrustment. *See Watson*, 325 Ill. App. 3d at 925 ("To impose foresight on defendant under the particular circumstances present in this case would render it

10

liable for anyone who drove the car, thus making it strictly liable."). This Court cannot say that under these circumstances, TCW knew or should have known that Dunn was going to operate the chassis "in a manner involving an unreasonable risk of harm to others," *Evans*, 201 Ill.2d at 434, when it did not retain control over the chassis after leasing it to NACPC (doc. 82 at 4). Additionally, Plaintiffs do not submit authority to support the argument that a lessor like TCW may be found liable for negligent entrustment when TCW did not know who would have access to it and was not required to track the motor carriers who use the chassis pool. *See Mwangangi v. Nielsen*, 48 F.4th 816, 832 (7th Cir. 2022) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is a good point despite a lack of supporting authority or in the face of contrary authority, forfeits the point."). Therefore, summary judgment is proper for TCW on the negligent entrustment claim contained in Count IV.

B. *Negligence in Leasing Chassis*

Aside from negligent entrustment, Plaintiffs allege that TCW was negligent in hiring, contracting with, and retaining Pinoy Trucking to use the equipment at issue. (Doc. 5 at 28). In Plaintiffs' Response, they argue TCW can be held liable under "traditional common law principals for its own negligent breaches of its duties," like ensuring that its equipment was operated by "safe, qualified motor carriers and drivers, and not conjoined with unsafe commercial motor vehicles." (Doc. 82 at 27–29). TCW rejects this, stating that Plaintiffs fail to explain how such safety screening could occur when it had no knowledge of which motor carriers would utilize the equipment in the chassis pool. (Doc. 83 at 15).

Here, Plaintiffs attempt to invoke a common-law duty to safeguard motorists who share the roadway with those who may use the leased equipment owned by TCW. (Doc. 82 at 28). There is no cited authority as to the existence of such duty under Illinois law; instead, Plaintiffs ask this Court to infer a duty so "a jury can conclude that TCW was negligent in leasing its chassis into a system that fails to take any precautions to prohibit the use of the equipment by unsafe carriers." (Doc. 82 at 27–28). In Illinois, "[t]he existence of a duty depends on whether the plaintiff and the defendant stood in such a relationship to each other that the law will impose upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 436 (2006). "This question turns largely on public policy considerations, informed by consideration of four traditional factors: (1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on the defendant.*" Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 18. Whether a common-law duty exists is a question of law for the court. *Iseberg v. Gross*, 227 Ill.2d 78, 87 (2007).

After considering the factors, the Court rejects the argument that TCW owed a duty of care to motorists, as the equipment lessor under these circumstances is not in the best position to prevent injuries like those suffered by Plaintiffs. In *Abdo v. Trek Transportation Co., Inc.*, 221 Ill. App. 3d 493 (2nd Dist. 1991), the plaintiff's decedent was killed when his vehicle struck the flatbed trailer of a truck that was making a delivery to a facility owned by a different company. *Id.* at 496. The plaintiff

12

sued the facility owner for negligence, alleging that it "had the duty to insure that deliveries to and pickups from its facility were made in a safe manner[.]" *Id.* at 495. The *Abdo* court noted that the plaintiff was attempting to impose a duty on the facility owner to ensure that its invitees acted in a reasonably safe manner, attributing the defendant's liability "not to the foreseeability of an injury resulting from a condition of a landowner's property, but rather resulting from the alleged negligent actions of another." *Id.* Even though the court held that "the driver's alleged violation of his statutory duty not to obstruct traffic was a reasonably foreseeable consequence of the configuration of driveway and the materials there placed[,]" it did not impose a duty upon the owner. *Id.* Because the defendant "had neither the right nor ability to control the truck driver's conduct . . . [t]he trucking company and truck driver, rather than [the defendant], were in the best position to prevent plaintiff's decedent's injury." *Id.* at 252–53. The circumstances there reinforced "the soundness of the policy of not imposing a general duty to guard against the negligence of others." *Id.*

Turning to the instant matter, Plaintiffs largely argue that the parties ultimately responsible for their injuries are Dunn and his employer, Pinoy Trucking, but contend that a duty to protect motorists should fall on TCW. While they argue that it is customary in the commercial trucking industry to screen motor carriers for adequate safety records (doc. 82 at 28), Plaintiffs do not point to evidence that the chassis at issue posed any danger to motorists absent independent, negligent actions

or omissions by third parties.[2] Nor do they explain why the burden should fall on TCW and not others like NACPC or the chassis pool. While the factual circumstances differ from those in *Abdo*, it is undisputed that TCW had "neither the right nor ability to control" the conduct of Pinoy Trucking and Dunn, and no control over the day-to-day use of the chassis. (Doc. 82 at 4, 7). Therefore, it logically follows that TCW is likely not in the "best position" to prevent injuries of this nature, and Plaintiffs fail to cite any case law justifying placement of this burden on the equipment owner and lessor. Illinois law is clear that " '[the] imposition of a general duty to anticipate and guard against the negligence of others would place an intolerable burden on society.' " *Ziemba v. Mierzwa*, 142 Ill.2d 42, 53 (1991) (quoting *Dunn v. Baltimore & Ohio Railroad Co.*, 127 Ill.2d 350, 366 (1989)). Thus, this Court rejects the plea to find TCW owed a common-law duty to protect motorists at large from the negligence of others.

C.   *Liability Related to the FMCSR*

Plaintiffs next argue that TCW has duties and responsibilities under the Federal Motor Carrier Safety Regulations ("FMCSR") and point to several factual disputes to contend summary judgment is inappropriate. (*See* doc. 82). Many of these relate to TCW's classification under the regulations. Namely, it is disputed whether

---

[2] Plaintiffs do not allege the chassis was defective when TCW leased it to NACPC. (*See* docs. 82 at 4–5, 83 at 18). Another consideration is that relevant, uncontested facts include "[t]here were no defects or deficiencies in the chassis, including the brakes of the chassis, involved in the incident at the time of the incident[,]" and "Plaintiffs have not identified any evidence to support their contention that there was any mechanical defect, defect in the brakes, and/or improperly maintained brakes on chassis TCWZ417132 on the date of the accident." (Doc. 82 at 4–5).

TCW is considered a "motor carrier" under the definitions found within 49 C.F.R. § 390.5 ("Section 390.5"); whether TCW was acting as a "motor carrier" with respect to the chassis; whether TCW has the duties and responsibilities attendant on the "motor carrier" classification, including "to see that companies that are allowed to operate their vehicles hire properly qualified commercial motor vehicle operators" and operate within the FMCSR; and whether either TCW or Pinoy Trucking qualifies as a statutory employer of Dunn under Section 390.5. (*See* docs. 82, 83).

Plaintiffs rely on an expert witness, Lewis Grill ("Mr. Grill"), to establish that TCW is considered a "motor carrier" under the applicable regulations and is therefore responsible for duties like maintenance and inspections. (Doc. 82). TCW asks the Court to ignore Mr. Grill's opinion, as it relates only to legal conclusions and the interpretation of federal regulations. (Doc. 83 at 10). In part, the disputes Plaintiffs identify include that

> 6. TCW is not a registered motor carrier and does not function as a motor carrier. (Ex. 4. Dep. of Ben Banks, 24:14-23; 74:15-20).
>
> Disputed: . . . Under § 390.5 of the Federal Motor Carrier Safety Regulations ("FMCSRs"), 49 C.F.R. § 390.5, as applied in the standards, customs, and practices of the trucking industry, the owner of a commercial motor vehicle qualifies as an employer, and an employer is included within the definition of a motor carrier. [Plaintiff's Ex. 1, Affidavit of Lewis Grill, pp. 31-32] . . .
>
> 9. TCW was not responsible for the maintenance and repair of the chassis. Section 4 of the Master Lease Agreement States:
>
>> Lessee [NACPC] agrees, at its expense, to maintain Equipment [chassis] at all times during this Lease in good repair and operating condition and in safe condition in accordance with FMCSA standards and all applicable laws and regulations, free of any and all liens and encumbrances. All repairs made by

> Lessee shall be in accordance with FMCSA standards issued from time to time. It is understood and agreed that NACPC has contracted with Consolidated Chassis Management, LLC (CCM) to perform maintenance for the chassis contributed by NACPC to the Midsouth Consolidated Chassis Pool. (Ex. 7).

> Disputed: The lease agreement speaks for itself; however, as owner of the chassis, TCW remained ultimately responsible for the maintenance of the chassis. [Plaintiff's Ex. 1, Affidavit of Lewis Grill, pp. 32].

(Doc. 82 at 8–10). Within the cited affidavit, Mr. Grill lists verbatim the definitions of driver, employee, employer, person, motor carrier, and motor vehicle as written in the FMCSR. (Doc. 82-1 at 30–31). He then includes the statement: "OPINION: As both an employer and a motor carrier, TCW is responsible for the following and abiding by the [regulations]." (Doc. 82-1 at 31). The following sections include verbatim paragraphs from the FMCSR on inspections, repairs, maintenance, and other requirements placed on motor carriers. (Doc. 82-1 at 31–3). Mr. Grill then writes:

> The [regulations] clearly layout the procedures to be followed regarding the responsibilities of each party regarding the pre-trip maintenance, and overall safety of the commercial equipment in use . . . As a motor carrier and owner of the chassis, TCW had a responsibility to follow up on who was operating their chassis and whether or not they were safe and complying with the [regulations] . . . As the [regulations] show, TCW is responsible for their own equipment and compliance . . . TCW is responsible for this accident occurring.

(Doc. 82-1 at 32).

Evidence presented to defeat a summary judgment motion must be admissible in content. *Payne*, 337 F.3d at 775 n.3; *see also Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009) (applying this rule "with equal vigor to expert testimony"). Rule 702 of the Federal Rules of Evidence permits the admission of

expert testimony if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." To determine the admissibility of an expert opinion, the Court acts as a "gatekeeper" to analyze whether the proffered expert testimony is reliable and relevant. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).

In the Seventh Circuit, it is well established that expert witnesses are not permitted to give testimony "as to legal conclusions that will determine the outcome of the case." *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003). Further, experts generally may not testify on pure issues of law, such as the meaning of statutes or regulations. *See, e.g., United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008); *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994) (extending the prohibition to the meaning of the Federal Motor Vehicle Safety Standards and whether a defendant complied with those standards). Courts have declined to allow testimony from trucking industry experts regarding the applicability of federal regulations. *See, e.g., Ashley v. Schneider Nat'l Carriers, Inc.*, No. 12-cv-8309, 2016 WL 3125056, at *12 (N.D. Ill. June 3, 2016) (finding expert's testimony regarding violation of Illinois laws and regulations regarding traffic accident to be inadmissible, as there was "simply too large of an analytical gap between [the expert's] factual assertions and his legal conclusions—a gap that [the expert] fills with his own statutory and regulatory interpretation—to allow [the expert] to offer these legal conclusions"). Most relevant, the same reasoning has been

applied to "exclude testimony from trucking industry experts regarding the applicability of the FMCSR to a particular set of facts." *Kucharski v. Orbis Corp.*, No. 14-cv-05574, 2017 WL 1806581, at *6 (N.D. Ill. May 5, 2017) (collecting cases from various circuits on the preclusion of expert testimony that seek to interpret the FMCSR).

Plaintiffs offer Mr. Grill's expert opinion to dispute whether the FMCSR applies to TCW, and whether TCW violated those standards.[3] As established in Seventh Circuit case law, the applicability of the FMCSR is not a question for an expert to resolve. *See Bammerlin,* 30 F.3d at 900–01 ("The meaning of federal regulations is not a question of fact, to be resolved by the jury after a battle of experts."). Thus, the statements made by Mr. Grill on which Plaintiffs rely on to dispute several facts are not taken into consideration by this Court. (*See, e.g.,* doc 82 at 9–13) (using expert testimony to dispute Fact No. 6, 7, 9, 10, 27, 33, 37, 38, 39, 45). This testimony is also used to support several statements in Plaintiffs' additional material facts section. (*See, e.g.,* doc. 83 at 8–10) (relying on expert testimony in disputed Fact No. 17, 18, 19). Because those statements are based on inadmissible content, they are left unsupported and will not be considered. Put simply, it is the Court's role to determine whether TCW is subject to the FMCSR.

---

[3] As noted in the cited case law, Mr. Grill may not give his opinion as to whether a defendant is subject to or violated the FMCSR; however, testimony like his is generally permitted as to the customs, standards, and practices within the commercial trucking industry. *See Kucharski*, 2017 WL 1806581 at *4. The Court also notes that Mr. Grill has been able to testify on almost identical legal conclusions in state court, but that does not influence the analysis here. *See McHale v. W.D. Trucking, Inc.*, 2015 IL App (1st) 132625, ¶ 77–86.

The first argument related to the FMCSR is that TCW is a "motor carrier" under the definitions provided in Section 390.5, and therefore is responsible for the maintenance and inspection of the chassis, along with "required driver inspection." (Doc. 82 at 30) (citing Sections 396.7, 396.3, 396.11, and 396.13 of the FMCSR). TCW argues that it is not a "motor carrier" and does not have the authority to operate as one. (Doc. 75 at 15). Nevertheless, TCW points to Seventh Circuit case law demonstrating that even if it "had a motor carrier authority operating license at the time of the accident [it] is not enough to impose liability under 49 C.F.R. § 390; the motor carrier authority must actually be in use in the incident." (Doc. 75 at 15) (citing *Camp v. TNT Logistics Corp.*, 553 F.3d 502, 507–10 (7th Cir. 2009)).

Statutory, nondelegable duties arise out of the FMCSR and apply to motor carriers authorized to operate by the Federal Motor Carrier Safety Administration ("FMCSA"). The purpose of the regulations was to prevent motor carriers from immunizing themselves from liability by leasing trucks and characterizing drivers as independent contractors. The regulations create a statutory employment relationship, allowing an interstate motor carrier to be held vicariously liable as a matter of law for the negligence of its statutory employee drivers. A "motor carrier" is either a for-hire motor carrier, engaged in the transportation of goods or passengers for compensation, or a private motor carrier, which provides transportation of property or passengers by commercial motor vehicle but is not for hire. 49 C.F.R. § 390.5. The term "motor carrier" also includes the term "employer," which is a person who owns or leases a commercial motor vehicle in connection with a business affecting

19

interstate commerce. *Id.* "[T]he crucial inquiry" in determining whether a defendant constitutes a motor carrier "is in what capacity [the defendant] was acting during the transaction." *Camp*, 553 F.3d at 507.

TCW is the owner-lessor of the chassis involved in the accident. The regulations provide a definition for "intermodal equipment," which explicitly includes a chassis. 49 C.F.R. § 390.5. Plaintiffs first point to the "employer" piece of the "motor carrier" definition, arguing that a lessor of a commercial motor vehicle falls within those considered statutory employers. However, they fail to address how a chassis is a "commercial motor vehicle" and offer no authority on the contention that TCW, as an asset-leasing company, may be considered an "employer" or "motor carrier" when it is not registered as one with the FMCSA. This does not persuade the Court that TCW is subject to the regulations.

Plaintiffs take a second approach, arguing that TCW was a "statutory employer" of Dunn by way of the FMCSR and thus liable for his actions, but it is also not persuasive. (Doc. 82 at 29–30). They attempt to label TCW as an "employer" and Dunn as an "employee" by again citing Section 390.5. (Doc. 82 at 29–30). Case law within the Seventh Circuit rejects the idea that a lessor, such as TCW, can be a statutory employer for purposes of liability under the FMCSR. *See Johnke v. Espinal-Quiroz*, No. 14-cv-6992, 2016 WL 454333, at *8 (N.D. Ill. Feb. 5, 2016) ("Plaintiffs' reliance on a broad reading of the definition of "employer" in 49 C.F.R. §§ 383.5 and 390.5 to include lessors . . . is not persuasive, and does not alter the fact that the FMCSR imposes liability on carrier-lessees and not equipment owners or lessors.").

20

The regulations provide "definitions, not bases for liability." *Lynch v. Collins*, No. 20 C 02477, 2022 WL 2159826, at \*3 (N.D. Ill. June 15, 2022). Even if TCW falls under the label of "employer," it remains illogical that TCW would become liable simply because it meets a definition. *See id.* ("It cannot be the case that [the lessor] is liable as an employer simply because it meets this definition. This would result in a nonsensical situation where any employer could be sued for any crash in the country involving a person who qualifies as [a statutory employee under the FMCSR]. So there must still be some evidence of an actual employer-employee relationship between the parties involved, and such evidence is completely absent here."). No definition changes the record that clearly outlines the details of the accident, including how TCW's only connection was as the lessor of the chassis. The undisputed record does not support the existence of an employer-employee relationship. If this Court found TCW liable for the actions of Pinoy Trucking and Dunn based solely on a definition in the regulations as Plaintiffs ask, it would be completely unhinged from related case law.

Without more, Plaintiffs cannot successfully argue that TCW is subject to the FMCSR by virtue of the "motor carrier" or "employer" definitions. Derivative arguments made by Plaintiffs, including that TCW failed to ensure safe operation of and maintain the equipment as mandated by the FMCSR, are not persuasive, as Plaintiffs have not successfully demonstrated that TCW is subject to the requirements. (Doc. 5 at 29).

The third approach taken by Plaintiffs asks this Court to "pierce the corporate veil," and apply the alter ego doctrine because TCW is affiliated with TCW, Inc. (Doc. 82 at 30–32). TCW, Inc., is a registered motor carrier. (Doc. 83 at 10). While Plaintiffs do not state this explicitly, the Court interprets this argument as an effort to classify TCW as a "motor carrier" and render it responsible for the duties required under the FMCSR. (Doc. 82 at 30). TCW dismisses the successful application of this argument, stating Plaintiffs offer no authority "for the proposition that if an entity is related to another entity that is a motor carrier, it too is a motor carrier, even if it is not registered as a motor carrier and does not function as one." (Doc. 83 at 17).

Under Illinois law,[4] "a corporate entity will be disregarded and the veil of limited liability pierced when two conditions are met." *Sea-Land Servs., Inc. v. Pepper Source*, 941 F.2d 519, 520 (7th Cir. 1991) (citing *Van Dorn Co. v. Future Chemical and Oil Corp.*, 753 F.2d 565 (7th Cir. 1985)). Those two conditions are "such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist" and "circumstances . . . that an

---

[4] Plaintiffs use Illinois law to argue that this Court should apply the alter ego doctrine. (*See* doc. 82). However, under Illinois choice-of-law rules, the law of the state of incorporation typically governs these issues. *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 378 (7th Cir. 2008). TCW is incorporated in Tennessee (doc. 53-1 at 4), indicating that the application of Illinois law by Plaintiffs was erroneous. However, because TCW did not argue in its Reply that Tennessee law applies, this Court will continue evaluating the issue under Illinois law. (Doc. 83 at 17). *See Garner v. Bumble Inc.*, No. 21-cv-50457, 2023 WL 6065481, at *7, n.4 (N.D. Ill. Sept. 18, 2023) (quoting *Joiner v. Ryder Sys.*, 966 F. Supp. 1478, 1482–83 (C.D. Ill. 1996) ("[S]ince both parties assume [without discussing] that Illinois law applies to the alter ego issue, the Court will not disturb that assumption, nor will it hold otherwise.")).

adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Id*. "A party seeking to pierce the corporate veil must make a substantial showing that one corporation is a dummy or sham for another." *Buckley v. Abuzir*, 2014 IL App (1st) 130469, ¶ 9.

Plaintiffs only offer evidence that TCW, Inc., leases the entirety of its equipment from TCW and that the two corporations share staff at the management level. (Doc. 82 at 30–32). However, neither condition required for piercing the corporate veil is met, as Plaintiffs offer no authority that this is evidence of "such unity of the interest and ownership" between TCW and TCW, Inc., or fraudulent conduct. There is no cited support that shared management staff or leased equipment can supply either missing condition. In *Johnke v. Espinal-Quiroz*, No. 14-CV-6992, 2017 WL 3620745, at *7 (N.D. Ill. Aug. 23, 2017), the plaintiffs made an argument nearly identical to the one here when they sought to hold "Steel Warehouse Company LLC liable as a motor carrier under the theory that Steel Warehouse Inc. is an empty shell and that Steel Warehouse Company LLC is its alter ego" in the aftermath of a multi-vehicle accident. *Id*. at *1. However, there, the district court weighed numerous factors that ultimately satisfied the necessary conditions and found the relationship between the two corporations went well beyond an affiliation. For example, the court discussed how the creation of one of the corporations was a "mere façade" for the other when faced with regulatory problems, their assets were treated as a common resource, the "Steel Warehouse Company" employees wore "Steel Warehouse" badges and had "Steel Warehouse" email addresses, certain payments to "Steel Warehouse

Company" employees came solely from "Steel Warehouse," and the two corporations had overlapping ownership. *Id*. at *8. From this undisputed evidence and more, the district court found one corporation existed solely for the benefit of the other and to shield assets from incurred liabilities. *Id*.

Looking at the record here, there are simply no facts to support that the affiliation between the two corporations is improper, and for Plaintiffs to suggest otherwise begins to cross the line into frivolity. Without more to suggest that TCW was an instrumentality of TCW, Inc., and that its existence included committing fraud or promoting injustice, this Court declines to exercise the alter ego doctrine.

It is worth noting that TCW was *operating* as an equipment lessor in the factual circumstances present here, rendering this argument a nonstarter and the disputed fact of whether TCW and TCW, Inc., share managerial staff immaterial.[5] (Doc. 82 at 12). Even if the Court agreed there was substantial evidence to allow application of the alter ego doctrine, TCW's role in this matter is as a lessor of the chassis. Plaintiffs' argument would remain that TCW (now combined with TCW, Inc.) is liable for the actions of Pinoy Trucking and Dunn, and responsible for the required duties under the FMCSR, because it now squarely fits under the definition of "motor

---

[5] Plaintiffs also rely on this information to dispute several of TCW's factual statements without explanation. (*See* doc. 82 at 8–9, 13). However, the Court views this type of response as argumentative and evasive. A response to a factual statement is not a place to introduce argument or additional facts. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643–44 (7th Cir. 2008) (argumentative responses that simultaneously deny the veracity of a defendant's proposed material fact and present separate, additional facts risk the possibility that the Court will consider defendant's proposed fact as undisputed).

24

carrier" within Section 390.5. Not only is arguing that a definition creates a basis for liability misplaced, but it is not the purpose of the alter ego doctrine. This doctrine, and piercing the corporate veil, are means of imposing liability when the corporation does not have the necessary assets. It is not intended to be used as the basis of an argument that the licensure or registration of one corporation should belong to another. Thus, Plaintiffs cannot establish liability by way of the FMCSR.

D.  *Negligence of Other Parties*

A final claim alleged by Plaintiffs is that TCW is vicariously liable for the negligence of other parties. (Doc. 5 at 28–29, 35–36). When Plaintiffs submitted additional material facts in response to the instant Motion, statements regarding Pinoy Trucking and Dunn were included. (Doc. 82 at 14–16). Of those, it is disputed whether Pinoy Trucking was required to submit safety records before accessing the chassis pool; whether it is customary to use a publicly available website to screen for a motor carrier's safety records; whether Pinoy Trucking had "continuous 'Alert' Safety Assessment status for vehicle maintenance" on the website; whether an inquiry into Pinoy Trucking's history would have revealed its "poor safety and maintenance history"; whether the inspection by the Illinois State Police revealed defects in the brakes that would have been detected in a "proper pre-trip inspection"; whether the tractor should not have been in service on the day of the accident; and whether defective brakes were a contributing cause of the collision. (*See* docs. 82, 83).

The factual statements related to Pinoy Trucking and Dunn are immaterial to the resolution of this Motion. While it is true that these disputed facts would be material if this Motion was brought by a different defendant, they are not material

to the resolution of the claims leveled against TCW. As discussed, Plaintiffs include various allegations at to TCW's liability for its own actions and liability for the actions of others throughout the Amended Complaint. (Doc. 5). The disputed facts are immaterial to determining TCW's liability with respect to its own actions. Similarly, the Court can determine whether TCW can be held liable for the actions of others as a matter of law, like Pinoy Trucking or Dunn, without resolving the disputed facts related to the accident.

In its Motion, TCW contends that the Graves Amendment bars the claims brought by Plaintiffs based on vicarious liability. (Doc. 75 at 21–25). Successful application of the Amendment is generally conceded in Plaintiffs' Response. (*See* doc. 82 at 18) ("These causes of action for TCW's direct negligence are not preempted by the Graves Amendment."). In relevant part, the Amendment provides:

> (a) IN GENERAL. An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or the lease, if—
>
> (1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
>
> (2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

49 U.S.C. § 30106 (definitions omitted). The purpose was "to protect rental companies who are sued simply because they own a vehicle that was involved in an accident." *Johnke v. Espinal-Quiroz*, No. 14-cv-6992, 2016 WL 454333, at *8 (N.D. Ill. Feb. 5, 2016). As such, courts have held the Graves Amendment preempts liability claims

against commercial lessors of motor vehicles after the effective date. *See Johnson*, 2010 WL 706037, at *3 (dismissing motor vehicle liability claim against defendant "engaged in the business of leasing a fleet of approximately 100,000 trailers"). However, courts differ in their interpretation of the scope of the statute's protection against claims based on a lessor's vicarious liability. The two interpretations of the statute are that it acts as an absolute bar on any vicarious-liability claims against a lessor, or that it allows vicarious-liability claims against a lessor if that lessor has been negligent. *See Parker v. Auto-Owners Ins. Co.*, No. 19-cv-374, 2020 WL 488366, at *2 (W.D. Wis. Jan. 30, 2020) (collecting cases on the application of both interpretations). Here, however, either approach to the Graves Amendment will bar the indirect liability claims because Plaintiffs have failed to show negligence on the part of TCW.

With respect to first requirement, it is undisputed that TCW leased the chassis that was later involved in the accident on August 23, 2019. (Doc. 82 at 3). The chassis was one of 1,100 pieces of equipment leased pursuant to the agreement between TCW and NACPC. (Doc. 82 at 3–4). At least one district court has applied the Graves Amendment to the lessor of an intermodal chassis, *Holder v. Suarez*, No. CV-14-1789, 2016 WL 593620, at *14 (M.D. Pa. Feb. 12, 2016), and Plaintiffs do not argue otherwise. Thus, the first subsection of the Graves Amendment required for preemption is satisfied. The second requirement is that there is no negligence on the part of TCW. As thoroughly discussed herein, Plaintiffs have not submitted evidence that demonstrates a genuine issue of material fact exists to preclude summary

27

judgment on the claims of direct negligence. Because both subsections are met, TCW cannot be liable for the actions of others, like Pinoy Trucking or Dunn, pursuant to the Graves Amendment.[6]

As summary judgment is appropriate for all negligence claims, the Court grants TCW's Motion in its favor as to Counts IV and VIII.

## II.    Loss of Consortium – Count IX

Plaintiff Karri Gruver's loss of consortium claim is derivative of those claims asserted by her spouse, Plaintiff Timothy Gruver. *See Illinois Farmers Ins. Co. v. Hall*, 363 Ill. App. 3d 989, 994 (1st Dist. 2006) ("[L]oss of consortium is a derivative claim to the direct injury that causes it.") (citation omitted). Accordingly, as the claims asserted by Timothy Gruver failed to establish liability on the part of TCW for the accident, Karri Gruver's loss of consortium claim fails against TCW, too. *See*

---

[6] In the Amended Complaint, Plaintiffs alleged a few legal theories to establish vicarious liability, like agency and joint venture. (Doc. 5 at 28–30). While the agency argument has been relatively abandoned by Plaintiffs, it is worthwhile to mention that it does not bar this Court from granting summary judgment for TCW on this count, as Plaintiffs have failed to prove any of the necessary elements. *See Sosa v. Onfido, Inc.*, 8 F.4th 631, 640 (7th Cir. 2021) (applying Illinois law and writing "[t]he test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal") (citations omitted). There are no facts in the record that establish TCW had the right to control any aspect of the work of Pinoy Trucking or Dunn.

Plaintiffs additionally alleged that TCW was in joint venture with the other Defendants, but later admitted that TCW was not acting in joint venture with any other named party. (*See* doc. 82 at 8) (looking at Fact No. 58). Therefore, even if the Graves Amendment did not apply to the lessor of an intermodal chassis, Plaintiffs have failed to establish evidence that creates a genuine issue of material fact to preclude summary judgment regarding TCW's vicarious liability for the actions of Pinoy Trucking, Dunn, or another Defendant.

*Johnson v. May*, 223 Ill. App. 3d 477, 488 (5th Dist. 1992) ("To recover on a loss of consortium claim, the deprived spouse must prove liability on the part of the defendant, marriage to the injured spouse, and damages."). As such, summary judgment on Count IX is granted for TCW.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant Tennessee Commercial Warehouse's Motion for Summary Judgment (doc. 75) is GRANTED. The Court grants summary judgment for Defendant Tennessee Commercial Warehouse on Counts IV, VIII, IX, and X of the Amended Complaint (doc. 5). Defendant Tennessee Commercial Warehouse's crossclaims (doc. 66) against Defendants Pinoy Trucking and Anthony Dunn remain unless properly dismissed.

SO ORDERED.

Entered this 1st day of May 2024.

s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge
